**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara A. Loos, | No. CV11-232-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Lowe's HIW, Inc., | |
| Defendant. | |

Currently pending before the Court is Defendant Lowe's HIW, Inc.'s Motion for Partial Judgment on the Pleadings (Doc. 11). The Court now rules on the Motion.

**I. BACKGROUND**

Plaintiff Barbara Loos worked for Defendant Lowe's HIW, Inc. ("Lowe's") from October 30, 2006 until her termination on June 9, 2010. Initially hired as a zone manager, she eventually became Administrative Manager at a Lowe's store in Scottsdale, Arizona. In her position as Administrative Manager, she reported to the Store Manager.

Roughly two years before Plaintiff's June 2010 termination, Scott Hewitt became the Store Manager at the Lowe's where she worked. Plaintiff and Mr. Hewitt shared an office. Plaintiff alleges that in addition to business meetings, Mr. Hewitt held informal gatherings of other managers and employees in their office. Mr. Hewitt held many of these gatherings in her presence.

Plaintiff alleges that at many of these informal sessions, Mr. Hewitt and other male

1 employees made crude and salacious jokes and discussed sexual topics and devices with
2 accompanying gestures. The conversations often related to products sold at an "adult" shop
3 where another manager's wife worked. Mr. Hewitt and others allegedly tried to involve
4 Plaintiff in these conversations. Plaintiff claims she required medical treatment for stress,
5 eating disorders, indigestion, sleeplessness, and loss of weight as a result of her work
6 environment.

7 To free herself from the unwanted sexual conversations at work, Plaintiff applied for a
8 transfer to another Lowe's store. Mr. Hewitt terminated her the day after she interviewed for
9 a job at a Lowe's store in Surprise, Arizona. Plaintiff asserts she was fired for an alleged
10 policy violation after following a procedure that had been accepted for years. She believes
11 that Lowe's treated her differently than similarly situated male employees by, among other
12 things, selectively enforcing policy violations.

13 Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity
14 Commission on August 16, 2010. (1st Am. Compl., Doc. 9, ¶17.) Plaintiff claims that she
15 timely filed her charge, and that the Arizona Civil Rights Division thereafter issued a Notice
16 of Right to Sue. (Id. ¶22.)

17 Plaintiff filed suit in state court on January 11, 2011. (Doc. 1-1, Exh. 2.) Defendant
18 removed to this Court on February 2, 2011. (Doc. 1.) Defendant filed a Motion to Dismiss
19 certain Counts (Doc. 6) on February 8, 2011. Plaintiff never responded to that Motion to
20 Dismiss, but filed a First Amended Complaint (the "FAC") on March 4, 2011. (Doc. 9.)

21 The FAC contains the following six claims for relief: sex discrimination; retaliation;
22 negligent misrepresentation; breach of the covenant of good faith and fair dealing; negligent
23 infliction of emotional distress; and intentional infliction of emotional distress. (Doc. 9.)
24 Defendant filed the pending Motion for Partial Judgment on the Pleadings on March 10,
25 2011. (Doc. 11.) Defendant asks for judgment on the pleadings on Plaintiff's claims for
26 retaliation; negligent misrepresentation; negligent infliction of emotional distress, and
27 intentional infliction of emotional distress.

28

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) is "functionally identical" to Rule 12(b)(6). The same legal standard therefore applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, - - F.3d - -, 2011 WL 1053366, *11 n.4 (9th Cir. March 24, 2011); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

The standard for deciding Rule 12(b)(6) and Rule 12(c) motions has evolved since the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, - - U.S. - -, 129 S.Ct. 1937 (2009).[1] To survive a motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

---

[1] The Ninth Circuit Court of Appeals has applied *Iqbal* to Rule 12(c) motions. *Cafasso ex rel.*, - - F.3d - - , 2011 WL 1053366 at *11 n.4.

1  Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court may dismiss a complaint for failure to state a claim for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. ANALYSIS AND CONCLUSION

### A. Retaliation (Second Claim for Relief)

In her Second Claim for Relief, Plaintiff alleges that Defendant's actions violated the retaliation provisions of the Arizona Civil Rights Act ("ACRA"), Title VII, and the Age Discrimination in Employment Act ("ADEA"). As an initial matter, because nothing in the FAC would bring this case within the ADEA – Plaintiff never even mentions her age and never alleges that she was discriminated against because of her age – the Court will grant Defendant's 12(c) motion on Plaintiff's ADEA retaliation claim.

Defendant argues Plaintiff's claim for retaliation fails as a matter of law because she did

1  not exhaust this claim at the administrative level. Defendant asserts that Plaintiff did not
2  mark the retaliation box on her Charge of Discrimination and did not list any retaliatory
3  conduct in her written description.

4  Before a plaintiff can bring a Title VII action in district court, she first must exhaust her
5  administrative remedies by filing a charge with the EEOC or appropriate state agency.
6  *Sommatino v. United States of Am.*, 255 F.3d 704, 707 (9th Cir. 2001). ACRA also requires
7  administrative exhaustion before a plaintiff can file a claim. *Madden-Tyler v. Maricopa
8  County*, 943 P.2d 822, 828 (Ariz. Ct. App. 1997). The administrative charge requirement
9  "serves the important purposes of giving the charged party notice of the claim and narrowing
10 the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d
11 1091, 1099 (9th Cir. 2002)(internal citations omitted).

12 The Court construes the language of administrative charges with liberality because most
13 employees are unschooled in the technicalities of formal pleading. *Id*. at 1100. But although
14 the Court liberally construes the charge, the charge must at least be sufficient to notify the
15 agency that employment discrimination is claimed. *Sommatino*, 255 F.3d at 710.

16 The Court has subject matter jurisdiction over all allegations that fell within the scope of
17 the EEOC's actual investigation or that fall within the scope of an investigation that
18 reasonably would be expected to grow out of the charge. *B.K.B.*, 276 F.3d at 1100. The
19 Court cannot consider allegations of discrimination not included in the administrative charge
20 unless the new claims are "like or reasonably related to the allegations contained in the
21 EEOC charge." *Id*. (internal citations omitted). The Court will consider new claims in the
22 complaint to be reasonably related to allegations in the charge to the extent the new claims
23 are consistent with the plaintiff's original theory of the case. *Id*. In analyzing whether a
24 plaintiff exhausted allegations not specified in her administrative charge, the Court can
25 consider: "the alleged basis of the discrimination, dates of discriminatory acts specified
26 within the charge, perpetrators of discrimination named in the charge, and any locations at
27 which discrimination is alleged to have occurred." *Id*.

28 Plaintiff did not attach her Charge of Discrimination to her FAC, but she references and

- 5 -

1 relies on the charge in the FAC. She relies on the charge by claiming that she timely filed
2 it. (Doc. 9 ¶22.) When deciding a motion for judgment on the pleadings, the Court may
3 consider, without converting the motion to a motion for summary judgment, documents
4 necessarily relied on in a complaint if the document's authenticity is not in question and there
5 are no disputed issues as to the document's relevance. *Coto Settlement v. Eisenberg*, 593
6 F.3d 1031, 1038 (9th Cir. 2010). The Court therefore may consider under a 12(c) standard
7 the Charge of Discrimination attached as Exhibit A to Defendant's Reply. (Doc. 18-1.)

8 But the Court could consider the Charge of Discrimination even if Plaintiff did not
9 reference and rely on it in the FAC because substantial compliance with the presentment of
10 discrimination complaints to an appropriate administrative agency is a jurisdictional
11 prerequisite for a Title VII claim. *Curry v. Shinseki*, 356 Fed.Appx. 983, 985, 2009 WL
12 4884329, *1 (9th Cir. December 14, 2009)(citing *Sommatino*, 255 F.3d at 708). If Plaintiff
13 did not administratively exhaust her retaliation claim, then this Court lacks jurisdiction over
14 the claim. *See Sommatino*, 255 F.3d at 708. In determining its subject matter jurisdiction,
15 the Court can look outside the pleadings. *McCarthy v. United States of Am.*, 850 F.2d 558,
16 560 (9th Cir. 1988).[2]

17 Plaintiff marked the Sex Discrimination box on the EEOC Charge of Discrimination and
18 did not mark the Retaliation box. The "Particulars" section of her Charge reads, in its
19 entirety:

20 I. I was employed by [Lowe's] from October 30, 2006 until June 9,
2010. My last position was an Administrative Manager. Since Store
21 Manager Scott Hewitt, w/m was assigned to my store 18 months ago,
I was subjected to a sexual hostile environment. During manager
22 meetings and manager's offices sexual jokes, sexual conversations and
pretended sexual stimulations occurred on a weekly basis. Further,
23 Hewitt terminated my employment for policy infractions that my male

---

[2] If substantial compliance with administrative presentment requirements were not a
jurisdictional prerequisite, the Court would treat the 12(c) motion with regard to the
retaliation claim as an unenumerated motion to dismiss. In deciding a motion to dismiss for
failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide
disputed issues of fact. *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). So, the
Court could consider the Charge of Discrimination under that standard as well.

- 6 -

1  equal manager, Kenny Childers, w/m, was not subjected too.

2  II. I believe I have been discriminated against due to my gender and subjected to a sexual hostile environment in violation of Title VII of the
3  Civil Rights Act of 1964, as amended.

4  (Doc. 18-1)(errors in original).

Even construing Plaintiff's charge liberally, nothing in it would have led the EEOC to investigate a retaliation claim, and nothing provides notice to Defendant of a retaliation claim. The allegations of retaliation found in the FAC are not "like or reasonably related" to the allegations contained in the charge. Nor are the new claims of retaliation consistent with Plaintiff's original theory of the case – sex discrimination and hostile work environment.

Plaintiff's EEOC charge does not include an allegation of retaliation or facts that would support the claim of retaliation she now makes. Her charge to the EEOC was narrow in scope, focusing exclusively on sex discrimination. The Court therefore finds that Plaintiff did not exhaust her retaliation claim at the administrative level and will dismiss her retaliation claims under Title VII and ACRA for lack of subject matter jurisdiction. *See Epps v. Phoenix Elementary Sch. Dist.*, 2009 WL 996308 (D. Ariz. April 14, 2009)(holding plaintiff did not exhaust his retaliation claim where his EEOC charge made no mention of retaliation).

**B. Negligent Misrepresentation (Third Claim for Relief)**

In her Third Claim for Relief, Plaintiff alleges that Defendant falsely represented to her that it provides its employees with a professional and positive workplace that does not tolerate discrimination and that Plaintiff relied on those representations in accepting employment with Defendant. Defendant argues that Plaintiff cannot base a negligent misrepresentation claim on the promise of future conduct.

Arizona recognizes the tort of negligent misrepresentation. *St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. banc 1987). A person may be liable for negligent misrepresentation if the person "fails to exercise reasonable care and competence in obtaining or communicating information and thereby, in the course of his

1 business or employment, provides false information for the guidance of others in their 2 business transactions, causing the recipients of the information to incur damages because 3 they justifiably relied on the false information." *PLM Tax Certificate Program 1991-92 L.P.* 4 *v. Schweikert*, 162 P.3d 1267, 1270 (Ariz. Ct. App. 2007)(citing *St. Joseph's Hosp.*, 742 P.2d 5 at 813). A person charged with negligent misrepresentation must have owed a duty to the 6 injured party to be liable. *Id*.

7 Even assuming Lowe's owed a duty to Plaintiff before she worked there, her negligent 8 misrepresentation claim must fail because it relies on representations regarding future 9 conduct. "Negligent misrepresentation requires a misrepresentation or omission of a *fact*. 10 A promise of future conduct is not a statement of fact capable of supporting a claim of 11 negligent misrepresentation." *McAlister v. Citibank (Arizona)*, 829 P.2d 1253, 1261 (Ariz. 12 Ct. App. 1992)(emphasis in original).

13 Defendant allegedly represented during the hiring process and in its handbook that if 14 Plaintiff came to work for Lowe's, then she would enjoy a professional and positive 15 workplace that does not tolerate discrimination. Plaintiff cannot base her misrepresentation 16 claim on Defendant's representations regarding her future work environment. The Court 17 therefore grants Defendant judgment on the pleadings on Plaintiff's Third Claim for Relief.

18 **C. Negligent Infliction of Emotional Distress (Fifth Claim for Relief)**

19 In her Fifth Claim for Relief, Plaintiff alleges that Defendant breached its duty not to 20 create a hostile environment and that Defendant knew or should have known that its breach 21 would cause Plaintiff severe emotional distress, which in fact occurred. Defendant argues 22 Plaintiff's negligent infliction of emotional distress claim fails as a matter of law because she 23 did not witness an injury to a closely related person and was not within any zone of danger 24 of bodily harm.

25 Arizona does recognize a claim for negligent infliction of emotional distress when 26 someone witnesses an injury to a closely related person. *Keck v. Jackson*, 593 P.2d 668, 669 27 (Arizona banc 1979). The elements of a bystander claim for negligent infliction of emotional 28 distress are: 1) the plaintiff must witness an injury to a closely related person; 2) be within

the zone of danger at the time of the injury; and 3) must suffer mental anguish manifested as physical injury. *Kaufman v. Langhofer*, 222 P.3d 272, 279 (Ariz. Ct. App. 2009). Plaintiff obviously cannot recover under a bystander theory of negligent infliction of emotional distress because she has not alleged she witnessed an injury to someone else.

But, contrary to Defendant's assertions, a plaintiff does not have to witness an injury to another to state a claim for negligent infliction of emotional distress. *Quinn v. Turner*, 745 P.2d 972, 973 (Ariz. Ct. App. 1987)("[W]e reject the defendants' contention that a cause of action for negligent infliction of emotional distress exists only where the plaintiff witnesses an injury to another person."). A cause of action for negligent infliction of emotional distress also exists if a plaintiff's shock or mental anguish developed solely from a threat to the plaintiff's personal security without witnessing an injury to another person. *Id.* The Revised Arizona Jury Instructions (Civil) 4th Edition lists the following elements for a negligent infliction of emotional distress (direct) claim: 1) the defendant was negligent; 2) the defendant's negligence created an unreasonable risk of bodily harm to plaintiff; 3) the defendant's negligence was a cause of emotional distress to the plaintiff; 4) the plaintiff's emotional distress resulted in physical injury or illness.

Further, courts appear to have expanded the negligent infliction of emotional distress cause of action to encompass employment cases. In *Carboun v. City of Chandler*, 2005 WL 2408294, *12 (D. Ariz. September 27, 2005), another employment case, the defendants moved for summary judgment on the plaintiff's negligent infliction of emotional distress claim, arguing that Arizona courts have not yet recognized the claim in the employment context. In denying the motion for summary judgment on that ground, the *Carboun* court cited Arizona's adoption of the Restatement (Second) of Torts §313.

The Arizona Court of Appeals noted in *Ball v. Prentice*, 781 P.2d 628, 630 n.1 (Ariz. Ct. App. 1989), that Arizona courts have adopted §313 of the Restatement. Section 313 reads:

> (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

- 9 -

> (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
> (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
> (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

RESTATEMENT (SECOND) OF TORTS § 313 (1965). The Restatement does not put any limitations on the availability of the tort.

Thus, an employer may be liable for negligent infliction of emotional distress for its termination of an employee under certain circumstances. The Court therefore cannot grant Defendant's Motion for Judgment on the Pleadings on Plaintiff's negligent infliction of emotional distress claim at this point in the litigation for the reasons urged in Defendant's Motion. Defendant may, if appropriate, move for summary judgment on Plaintiff's negligent infliction of emotional distress claim.

**D. Intentional Infliction of Emotional Distress (Sixth Claim for Relief)**

In her Sixth Claim for Relief, Plaintiff alleges that Defendant's actions in creating a hostile work environment, sexually harassing her, and subjecting her to discriminatory conduct were intentional and outrageous and caused her severe emotional and physical distress. Defendant argues that Plaintiff has not alleged extreme and outrageous conduct by Lowe's or facts sufficient to show that Lowe's intended to cause her distress or recklessly disregarded the probability such distress would occur.

The elements of an intentional infliction of emotional distress claim in Arizona are: 1) conduct by the defendant that is extreme and outrageous; 2) the defendant either intends to cause emotional distress or recklessly disregards the near certainty that such distress will result; and 3) severe emotional distress occurs as a result of the defendant's conduct. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 562-63 (Ariz. Ct. App. 1995). Plaintiff must demonstrate that Defendant's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious

- 10 -

1 and utterly intolerable in a civilized community." *Id.* at 563 (internal citations omitted). This
2 Court must determine whether Defendant's alleged conduct is sufficiently extreme and
3 outrageous to state a claim for relief.

4 Plaintiff has alleged that her Store Manager, Mr. Hewitt, held informal gatherings of
5 employees in their shared office that often involved sexual talk, jokes, and gestures. She
6 alleges that Mr. Hewitt and other employees sometimes tried to involve her in these
7 conversations without her consent. One time, after a graphic discussion of a sexual
8 lubrication product, Mr. Hewitt suggested that the Plaintiff should try it and laughed while
9 the others present produced vulgar sound effects. (FAC, Doc. 9, ¶11.) According to
10 Plaintiff, on numerous occasions, sexually explicit comments were accompanied by
11 simulated sexual acts, including feigned masturbation and oral sex acts. (Id.) As for
12 Defendant Lowe's conduct, Plaintiff alleges that at some point, she "voiced her concerns to
13 the Area Human Resources Manager, but only received increased hostile and abusive
14 retaliatory treatment from Hewitt following that effort . . .." (Id. ¶15.)

15 The Court must determine whether Plaintiff has alleged facts sufficient to state a claim
16 against Defendant Lowe's either for Lowe's own actions or on a *respondeat superior* theory
17 for the actions of Mr. Hewitt. From the outset, the Court notes that in Arizona, "an employer
18 is rarely liable for intentional infliction of emotional distress when one employee sexually
19 harasses another." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007);
20 *Mintz*, 905 P.2d at 563 ("It is extremely rare to find conduct in the employment context that
21 will rise to the level of outrageousness necessary to provide a basis for recovery for the tort
22 of intentional infliction of emotional distress.").

23 In *Smith v. Am. Express Travel Related Serv. Co.*, 876 P.2d 1166 (Ariz. Ct. App. 1994),
24 the Arizona Court of Appeals analyzed whether the plaintiff's employer could be held liable
25 for the sexual assault and harassment of the plaintiff by her manager who was not her direct
26 supervisor. Under *respondeat superior*, an employer in Arizona is vicariously liable for the
27 behavior of an employee only when the employee acts within the course and scope of his
28 employment. *Id.* at 1170. An employee acts within the course and scope of his employment

1  if his conduct is "of the kind the employee is employed to perform, it occurs substantially
2  within the authorized time and space limit, and it is actuated at least in part by a purpose to
3  serve the [employer]." *Id.*; *Ray Korte Chevrolet v. Simmons*, 571 P.2d 699, 704 (Ariz. Ct.
4  App. 1977)("[A]n employee is acting within the scope of his employment while he is doing
5  any reasonable thing which his employment expressly or impliedly authorizes him to do or
6  which may reasonably be said to have been contemplated by that employment as necessarily
7  or probably incidental to the employment.").

8  The *Smith* court found that the manager's conduct in sexually assaulting and harassing
9  the plaintiff was outside the scope of the manager's employment because his misbehavior
10 and assaultive conduct "was neither the kind of activity for which he was hired nor was it
11 actuated, even in part, by a desire to serve [the employer]."[3] *Smith*, 876 P.2d at 1170. The
12 court held that under common law principles, "an employee's sexual harassment of another
13 employee is not within the scope of employment." *Id*. The court further held that the
14 employer had not ratified the manager's conduct. *Id*. at 1172-73.

15 In *State of Arizona v. Schallock*, 941 P.2d 1275, 1281 (Ariz. banc 1997), the Arizona
16 Supreme Court disagreed with *Smith* to the extent *Smith* suggested that an employer could
17 never be held liable for an employee's sexual harassment of another employee. The
18 *Schallock* court outlined four special factual and legal considerations for analyzing the law
19 of agency in supervisory sexual harassment cases:

20 > First, this case involves claims of a managing officer's sexual
>  harassment of subordinate employees over whom he had power to hire
21 >  and fire, promote and demote, instruct and control. This distinguishes
>  the case from the great majority of cases involving torts committed by
22 >  a servant against either a non-employee or co-employee. Language
>  used in such cases is sometimes inapplicable to cases involving a
23 >  managing officer's harassment of a subordinate. . . . Second, the law of
>  agency governs both commercial relations and master-servant relations.
24 >  We must be careful to apply only those rules that pertain to the latter
>  situation. Third, phrases such as "course and scope of employment"
25 >  and "scope of authority" carry the gloss of historical meaning and

---

27 [3]Generally, whether an employee's tort is within the scope of employment is a
   question of fact, but is a question of law if the undisputed facts indicate that the conduct was
28 clearly outside the scope of employment. *Smith*, 876 P.2d at 1171.

- 12 -

> policy considerations much more complex than the words themselves indicate. . . . Finally, in determining course and scope in a sexual harassment case, we must realize that employers never adopt resolutions authorizing sexual harassment. Nor do they grant such authority in job descriptions or employment manuals. . . . In the absence of written controls, a firm's policies set the limits both on what is tolerated or permitted and on the authority given its supervisors.

*Id.* at 1282.

The *Schallock* court found that a supervisor's sexual harassment of his subordinates may be in the scope of employment, even though such behavior does not appear to be motivated by a purpose to serve the employer, because "[i]n fondling the file clerks and offering advancement for sex, [the supervisor] was both serving the master by running the office – a task he was explicitly authorized to do – and serving his personal desires. That his motives were mixed is of consequence, but the mixed motives cut both ways." *Id.* at 1283. The court noted that even criminal acts may be within the scope of employment. *Id.* at 1284. The *Schallock* court ultimately held that the supervisor's harassing actions, even if committed to satisfy his own "aberrant desires," were part of or incidental to his employment as executive director. *Id.*

This case appears more similar to *Schallock* than to *Smith*. Plaintiff alleged that as Administrative Manager, she reported to the Store Manager, Mr. Hewitt, which would make him her supervisor. Mr. Hewitt seemingly had the power to fire Plaintiff because she alleges that he terminated her employment on June 9, 2010. However, unlike *Schallock*, Plaintiff has not alleged any facts that would demonstrate Lowe's probably had known for years about Mr. Hewitt's harassment of female employees.

For purposes of this Motion only,[4] the Court will assume that Mr. Hewitt's alleged actions were in the scope and course of his employment and therefore that Lowe's could be held vicariously liable for intentional infliction of emotional distress if Mr. Hewitt's conduct was extreme and outrageous. The Court must determine whether Plaintiff has alleged sufficient

---

[4] The Court does not decide the scope of employment issue here, and the parties are free to litigate the issue in the future.

- 13 -

1  facts to state a claim for intentional infliction of emotional distress against Mr. Hewitt. The
2  Court finds that she has not.

3  Plaintiff has alleged that Mr. Hewitt engaged in sexual talk and made sexual gestures in
4  her presence and attempted to involve her in some conversations with sexual topics. While,
5  if true, Mr. Hewitt's behavior certainly was inappropriate, it does not rise to the level of
6  extreme and outrageous. Plaintiff has not alleged facts demonstrating that his conduct was
7  "so outrageous in character and so extreme in degree, as to go beyond all possible bounds
8  of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."
9  *Mintz*, 905 P.2d at 563. Plaintiff therefore fails to state an intentional infliction of emotional
10  distress claim against Mr. Hewitt for which Defendant Lowe's could be held vicariously
11  liable.

12  The Court next analyzes whether Plaintiff has alleged facts sufficient to hold Lowe's
13  independently liable for intentional infliction of emotional distress. In *Ford v. Revlon, Inc.*,
14  734 P.2d 580 (Ariz. banc 1987), the Arizona Supreme Court analyzed whether an employer
15  can be held independently liable when its supervisor is found not guilty of intentional
16  infliction of emotional distress and whether the failure of an employer to take appropriate
17  action in response to an employee's complaints of sexual harassment by a supervisory
18  employee can constitute intentional infliction of emotional distress. The Arizona Supreme
19  Court answered both questions in the affirmative.

20  The *Revlon* court found that the corporate defendant's repeated, ongoing failure to take
21  any action to stop the sexual assaults and harassment committed by its supervisory employee
22  constituted intentional infliction of emotional distress. 734 P.2d at 586. The Court held that
23  the corporate defendant's conduct could be characterized as extreme and outrageous because
24  the plaintiff had made numerous managers aware of her supervisor's actions at work
25  activities and had done everything possible, both within the announced policies of the
26  company and without, to bring the harassment to the company's attention. *Id*. at 585.
27  Nonetheless, the company ignored the plaintiff and the situation she faced for nearly a year
28  *Id*. The Court further found that even if the company did not intend to cause the plaintiff

1 emotional distress, its reckless disregard of the supervisor's conduct made it nearly certain that such distress would occur. *Id.*

Plaintiff alleges that she "voiced her concerns to the Area Human Resources Manager, but only received increased hostile and abusive retaliatory treatment from Hewitt following the effort, which caused Plaintiff great concern about the integrity of Lowe's open door policies." (FAC, Doc. 9, ¶15.) Plaintiff does not describe the particular concerns she voiced to the Human Resources Manager. Nor does Plaintiff allege when she spoke with the Human Resources Manager, i.e., whether it was one week or one year before her termination. Plaintiff also does not outline what Defendant Lowe's did in response to her concerns, whether it conducted an investigation. She only states what Mr. Hewitt did in response to her report.

Even if the Court assumes Lowe's did not promptly investigate Plaintiff's "concerns," Lowe's alleged conduct was not so extreme as to go beyond all possible bounds of decency. Plaintiff's alleged situation :

> does not remotely resemble the facts in *Ford*. There, for nearly a year, Ford reported to Revlon officials that her supervisor was sexually harassing her. She also complained about the situation to numerous Revlon employees. In addition, she told the comptroller in Phoenix, the personnel manager for the clerical and technical group in the Phoenix plant, the personnel manager for executives, the director of personnel at the Phoenix plant, a manager in receiving, a manger of human resources at the company headquarters in New Jersey, and a corporate Equal Employment Opportunity specialist. It was a year and month after the supervisor's first act of harassment before Revlon censured the supervisor.

*Smith*, 876 P.2d at 1174.

Plaintiff has not alleged that Defendant Lowe's took no action after Plaintiff talked to the Area Human Resources Manager. Even assuming that the Area Manager did not promptly investigate, one isolated failure to investigate does not constitute atrocious and utterly intolerable behavior. The Court therefore finds that Plaintiff has failed to alleged facts sufficient to state an intentional infliction of emotional distress claim against Lowe's and will grant Defendant's 12(c) Motion on Plaintiff's Sixth Claim for Relief.

Accordingly,

1  **IT IS ORDERED GRANTING** in part and **DENYING** in part Defendant's Motion for
2  Partial Judgment on the Pleadings (Doc. 11).  The Court grants the Motion with respect to
3  Plaintiff's Second, Third, and Sixth Claims for Relief.  The Court denies the Motion with
4  respect to Plaintiff's Fifth Claim for Relief.

5  DATED this 20th day of June, 2011.

James A. Teilborg
United States District Judge